SLIP OP. 07–145

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UGINE AND ALZ BELGIUM, N.V., ARCELOR STAINLESS USA, LLC, and ARCELOR TRADING USA, LLC,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>UNITED STATES,<br><br>    *Defendant*,<br><br>  and<br><br>ALLEGHENY LUDLUM CORPORATION, AK STEEL CORPORATION, UNITED AUTO WORKERS LOCAL 3303, UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC, NORTH AMERICAN STAINLESS and ZANESVILLE ARMCO INDEPENDENT ORGANIZATION,<br><br>    *Defendants-Intervenor*. | **BEFORE: JUDGE GREGORY W. CARMAN**<br><br>Court No.: 05-00444 |

[Plaintiffs' motion for Oral Argument is DENIED; Plaintiffs' motion for judgment upon the agency record is GRANTED and the matter is REMANDED to the Department of Commerce with instructions to issue revised liquidation instructions consistent with this Opinion; and Defendant's motion to dismiss is DENIED.  A separate Order will issue.]

Shearman & Sterling LLP, (Ryan A. T. Trapani and Robert S. LaRussa) for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director; and Michael D. Panzera, Trial Attorney, Civil Division, U.S. Department of Justice, Commercial Litigation Branch; Jennifer I. Johnson, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant.

Kelly Drye Collier Shannon (R. Alan Luberda; David A. Hartquist; and Adam H. Gordon) for Defendants-Intervenor.

**OPINION**

Date: October 1, 2007

**CARMAN, JUDGE:** This matter is before this Court on motion for judgment upon the

agency record and on motion to dismiss. Plaintiffs, Ugine & ALZ Belgium, N.V., Arcelor

Stainless USA, LLC, and Arcelor Trading USA, LLC's (together "Plaintiffs"), move pursuant to

USCIT R. 56.1 to challenge certain final liquidation instructions[1] issued by the International

Trade Administration of the U.S. Department of Commerce ("Government" or "Commerce" or

"Defendant") on the grounds that they are arbitrary, capricious or otherwise not in accordance

with law. Commerce moves to dismiss Plaintiffs' Complaint, pursuant to USCIT R. 12(b)(1),

arguing that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1581(i). Alternatively,

assuming jurisdiction is proper, Commerce opposes Plaintiffs' motion for judgment upon the

agency record. The domestic industry, petitioners of the initial antidumping duty ("ADD") and

countervailing duty ("CVD") orders, participate in this action as Defendants-Intervenor and

support Defendant's motions.

As discussed below, this Court denies Defendant's motion in its entirety and finds that

Commerce's liquidation instructions are indeed arbitrary, capricious or otherwise not in

---

[1]The relevant liquidation and cash deposit instructions issued by Commerce are: July 1, 2005 Antidumping Duty ("ADD") Liquidation Instructions, Message No. 5182203; July 8, 2005 Countervailing Duty ("CVD") Cash Deposit Instructions, Message No. 5189205; July 8, 2005 CVD Liquidation Instructions, Message No. 5189204; July 18, 2005 ADD Liquidation Instructions, Message No. 5199201. (See Pls.' Mem. in Supp. of its R. 56.1 Mot. for J. Upon the Agency R. ("Pl. Br.") 1.) Plaintiffs specifically challenge the liquidation instructions for July 8, 2005 CVD, Message No. 5189204 and July 18, 2005 ADD, Message No. 5199201 (collectively, "POR 1 Liquidation Instructions"). (See Pls.' Reply Br. & Resp. to Def.'s Mot. to Dismiss ("Pl. Reply Br.") 15 n.17.) Plaintiffs also challenge the July 1, 2005 ADD Liquidation Instructions, Message No. 5182203 to the extent it "implicitly instruct[s] Customs to treat entries of German merchandise entered prior to May 1, 2002 as Belgian." (Id.)

accordance with law.  This Court therefore grants Plaintiffs' motion and remands this matter to

Commerce to issue revised liquidation instructions consistent with this Opinion.  A separate

Order of the Court will issue.

## PROCEDURAL HISTORY

On December 14, 2004, Commerce published the final results of the fourth administrative

review of the antidumping order on certain stainless steel plate in coils ("SSPC") from Belgium.

SSPC from Belgium, 69 Fed. Reg. 74,495 (Dep't Commerce Dec. 14, 2004) (final results of

ADD administrative review) [hereinafter "Final Results"].  Among other things decided in the

Final Results, Commerce determined, following a country-of-origin review, that certain SSPC

that had been hot-rolled in Germany and not further cold-rolled in Belgium fell outside the scope

of the ADD order for Belgian SSPC because SSPC that had been produced according to those

specifications was of German origin.[2]

Subsequently, on February 22, 2005 Commerce issued draft liquidation and cash deposit

instructions and solicited comments therein.  (See Letter from Maria MacKay to All Interested

Parties (Feb. 22, 2005), Conf. R. Doc. 4.)  Plaintiffs argued that Commerce amend the liquidation

instructions to reflect that "all entries of SSPC . . . hot rolled in Germany and not further cold

rolled in Belgium [are] outside the scope" of the ADD and CVD orders "and, therefore, should

---

[2]Commerce explained in great detail the reasons for its decision to grant Plaintiffs'
requested country-of-origin application in a memorandum.  (Issues & Decision Mem. for the
Final Results of the Fourth Admin. Review of the ADD Order on SSPC from Belgium, 10 (Dec.
14, 2004), Pub. R. Doc. 7 [hereinafter "Issues & Decision Mem."].)

be liquidated [duty] free." (Letter from Robert S. LaRussa, Counsel to U&A Belgium, to Hon.

Carlos M. Gutierrez, Secretary of Commerce, 3 (Feb. 24, 2005), Pub. R. Doc. 8.)

In May and June 2005 Commerce staff held several ex parte meetings with Plaintiffs and

Defendants-Intervenor, concerning the language of the proposed liquidation instructions and

whether Commerce should apply its country-of-origin determination retroactively to cover

Plaintiffs' unliquidated entries from prior administrative reviews.

On July 1, 2005, Commerce released a memorandum decision ruling, inter alia, that the

country-of-origin determination, previously published in the Final Results, supra, would be

applied only to "entries covered by the fourth review and future entries, i.e., to entries made on or

after May 1, 2002." (See Customs Instructions for the Final Results of the Fourth Administrative

Review of the ADD Order on SSPC from Belgium, 5 (Jul. 1, 2005), Pub. R. Doc. 19 [hereinafter

"Liquidation Instr. Mem."].) Commerce then proceeded to issue additional liquidation and cash

deposit instructions, which also rejected Plaintiffs' position that the country-of-origin

determination from the Final Results should be applied retroactively. See note 1, supra.

Plaintiffs timely filed suit challenging Commerce's liquidation instructions and asked the

court to enjoin liquidation of the entries at issue, pending the outcome of this action. The court

denied Plaintiffs' request for a preliminary injunction. Ugine & ALZ Belgium v. United States,

29 CIT __, 391 F. Supp 2d 1284 (2005). The U.S. Court of Appeals for the Federal Circuit

("CAFC") reversed and instructed the court to enjoin liquidation of Plaintiffs' entries. Ugine &

ALZ Belgium. v. United States, 452 F.3d 1289 (Fed. Cir. 2006). The court thereafter issued an

Order of Preliminary Injunction. (See Order of Preliminary Injunction, Ct. R. Doc. 44.)

### FACTUAL BACKGROUND

Plaintiffs are importers of SSPC.  (Compl. ¶¶ 1-3; <u>Ugine & ALZ Belgium</u>, 452 F.3d at 1290).  Following multiple investigations concerning importations of SSPC from numerous countries, Commerce published an affirmative CVD order and an affirmative ADD order covering, <u>inter alia</u>, Belgian SSPC.  <u>SSPC from Belgium, Italy & South Africa</u>, 64 Fed. Reg. 25,288 (Dep't Commerce May 11, 1999) (notice of CVD orders); <u>Certain SSPC from Belgium, Canada, Italy, the Republic of Korea, South Africa, & Taiwan</u>, 64 Fed. Reg. 27,756 (Dep't Commerce May 21, 1999) (notice of ADD orders).

### I.      First Administrative Review

In July 2000, Commerce initiated the first administrative review of the ADD and CVD orders for Belgian SSPC for the period of review ("POR") November 4, 1998 through April 30, 2000.  <u>Initiation of ADD & CVD Administrative Reviews & Requests for Revocations in Part</u>, 66 Fed. Reg. 41,942 (Dep't Commerce July 7, 2000).  Because, Plaintiffs ceased cooperation with Commerce during this first administrative review,  Commerce assigned Plaintiffs an ADD margin based on adverse facts available.  <u>SSPC from Belgium</u>, 66 Fed. Reg. 56,272, 56,273 (Dep't Commerce Nov. 7, 2001) (final results of ADD administrative review).  Plaintiffs did not appeal the final results of the first administrative review, however, Defendants-Intervenor (the domestic industry) did.  See <u>Allegheny Ludlum Corp. v. United States</u>, 27 CIT 1461, 1461 (2003) (appealing Commerce's calculation of the total adverse facts available rate during the first administrative review).

In August 2001, Commerce issued its final determination in the first CVD administrative review.  <u>SSPC</u>, 66 Fed. Reg. 45,007 (Dep't Commerce Aug. 27, 2001) (final results of CVD

administrative review).  Plaintiffs appealed this final determination.  ALZ N.V. v. United States,

27 CIT 1265, 283 F. Supp. 2d 1302 (2003).  In December 2001, the court preliminarily enjoined

liquidation of entries that were subject to the CVD administrative review.  (See Def.'s Mot. to

Dismiss & Resp. to Mot. for J. upon the Agency R. 4-5 ("Def. Br.").)  Accordingly, liquidation

was suspended for Plaintiffs' entries that were simultaneously subject to both the CVD order and

the ADD order.  (Id.; see also Suspension of Liquidation Instructions, Message No. 3351206

(Dep't Commerce Dec. 17, 2003); Suspension of Liquidations Instructions, Message No.

3357201 (Dep't Commerce Dec. 23, 2003).

    In July 2003, the court remanded the matter to Commerce.  See ALZ N.V., 27 CIT at

1286, 283 F. Supp. 2d at 1320.  Almost a year later, in April 2004, the court sustained

Commerce's determination regarding the first CVD administrative review.  ALZ N.V. v. United

States, 28 CIT 541, 541 (2004).[3]  Commerce thereafter published amended final results.

Stainless Steel Plate Coils from Belgium, 70 Fed. Reg. 18,374 (Dep't Commerce Apr. 11, 2005)

(notice of amended final results of CVD administrative review).

    As a result of the litigation stemming from the first administrative review, which had not

been fully resolved until April 2005, there remained perhaps dozens of unliquidated entries still

under suspension.  For Plaintiffs, this fortunate circumstance forms the backdrop to this lawsuit.

Before Commerce could issue liquidation instructions for these entries, following publication of

the amended final results for the CVD administrative review, Plaintiffs brought the instant

lawsuit, including an application to enjoin liquidation of these first POR entries.

---

[3]Commerce filed an appeal, which was subsequently dismissed by stipulation of the
parties.  ALZ N.V. v. United States, 114 Fed. Appx. 401 (Fed. Cir. 2004).

## II.    The Fourth Administrative Review[4]

The fourth administrative review was initiated by request from both Plaintiffs and

Defendants-Intervenor.  Initiation of ADD & CVD Administrative Reviews & Request for

Revocation in Part, 68 Fed. Reg. 39,055 (Dep't Commerce July 1, 2003).  Plaintiffs had

undergone an organizational change ("U&A Belgium" was created following Ugine, S.A.'s

purchase of ALZ, N.V.) due to a merger and had also switched counsel during this period.  See

SSPC from Belgium, 69 Fed. Reg. 32,501, 32,503 (Dep't Commerce June 10, 2004) (preliminary

results of ADD administrative review) [hereinafter  "Preliminary Results"].

It was during this, the fourth administrative review, that Plaintiffs petitioned Commerce

"about determining [whether] German-origin SSPC is outside the scope of the administrative

review of Belgian SSPC."  (Letter from Robert LaRussa, Esq. to Hon. Donald L. Evans (Apr. 21,

2004), Pub. R. Doc. 1 [hereinafter "April 2004 Letter"]; Letter from Robert LaRussa, Esq. to

Hon. Donald L. Evans, including presentation slides (Apr. 21, 2004), Pub. R. Doc. 2 [hereinafter

"April 2004 Handouts"].)

---

[4]The second administrative review for the ADD order on SSPC, covered the POR from May 1, 2000 through April 30, 2001, was initiated in June 2001 and completed in October 2002. See Stainless Steel Plate in Coils from Belgium, 67 Fed. Reg. 64,352 (Dep't Commerce Oct. 18, 2002) (final results of antidumping duty administrative review).  No appeal was filed, see Defs.-Intervenor's Resp. Br. (Defs.-Intervenor's Resp. Br. ("Defs.-Int. Br.") 5), and all entries within the purview of this administrative review were either liquidated or deemed liquidated as of April 13, 2003.  (Def. Br. 6.)

The third administrative review for the ADD order on SSPC covered the POR from May 1, 2001 to April 30, 2002.  This review was rescinded following Plaintiffs' timely withdrawal of its request for review.  See Stainless Steel Plate in Coils from Belgium, 67 Fed. Reg. 64,868 (Dep't Commerce Oct. 22, 2002) (notice of recision of ADD and CVD order for the period May 1, 2001 through April 30, 2002).  No appeal was filed, see Defs.-Inter. Br. 6, and all entries within the purview of this administrative review were either liquidated or deemed liquidated as of April 23, 2003.  (Def. Br. 7.)

According to Plaintiffs, since the imposition of the ADD and CVD orders on SSPC from Belgium in 1999, they had been continuously importing "SSPC that was hot rolled in Germany and not further cold rolled in Belgium." (Pl. Br. 2; Compl. ¶ 9.) Though acknowledging that "[i]mporters are responsible for designating a country of origin when their goods arrive in the United States," Plaintiffs apparently erred in their country-of-origin designations with respect to some entries of SSPC. (See Pl. Br. 2 (citing 19 C.F.R. § 141.86(a)(10) (2007)); Compl. ¶ 10 ("Although the SSPC was not further cold rolled in Belgium, it was pickled, annealed, packaged, and shipped from Belgium. Accordingly, at the time of entry, [Plaintiffs] mistakenly declared the country of origin for the merchandise to be Belgium rather than Germany.").) Citing Commerce and Customs practice, Plaintiffs argued that the country-of-origin designation should have been marked as Germany and not Belgium. (April 2004 Letter, supra, at 2; Pl. Br. 2.) Plaintiffs' error originated in their initial designation of certain imports of SSPC as Belgian where they had been "finished and packaged" in Belgium. (Pl. Br. 3; Compl. ¶¶ 9-13.) This mistake in country-of-origin designation was the result of an apparent confusion regarding the locus of the SSPC's "substantial transformation."[5]

---

[5]"Substantial transformation" is a technical and legal term that "generally refers to a degree of processing or manufacturing resulting in a new and different article. Through that transformation, the new article becomes a product of the country in which it was processed or manufactured." Cold-Rolled Steel from Argentina, 58 Fed. Reg. 37,062, 37,065 (Dep't Commerce Jul. 9, 1993) (final determination of sales at less than fair value); see also E.I. Dupont De Nemours & Co. v. United States, 22 CIT 370, 374, 8 F. Supp. 2d 854, 858 (1998) ("[W]hether the processes performed on merchandise in a country are of such significance as to require that the resulting merchandise be considered the product of the country in which the transformation occurred.").

As referenced in this Opinion, "substantial transformation" refers to the doctrine as adopted by the Commerce Department as distinguished from Customs' own doctrine. While the "Department may consider the decisions of Customs, it is not obligated to follow, nor is it bound

(continued...)

Plaintiffs erroneously assumed that their minor processing[6] of the SSPC (i.e., the

"finishing and packaging") altered the SSPC's essential character so that it became a product of

another country—Belgium.  Allegedly, Plaintiffs' new counsel recognized that this assumption

was contrary to Commerce's decisions and thus raised the issue with Commerce sometime

around April 2004, during the fourth administrative review.  (See April 2004 Letter, supra; April

2004 Handouts, supra.)  As a result of this error, Plaintiffs had mistakenly "made cash deposits of

antidumping and countervailing duties as if [their] merchandise was Belgian" starting in 1999

through the POR for the fourth administrative review of the ADD order (i.e., May 1, 2002

through April 30, 2003).  (Pl. Br. 3.)

Upon realization of their mistake, Plaintiffs filed letters with Customs in order to correct

the country-of-origin designation and seek a refund of the deposits.  (Pl. Br. 3.)  Plaintiffs also

---

[5](...continued)
by, the classification determinations of Customs . . . ."  Wirth Ltd. v. United States, 22 CIT 285,
289, 5 F. Supp. 2d 968, 973 (1998) ("Commerce, not Customs, has authority to clarify the scope
of AD/CVD orders and findings.") (internal quotation and citation omitted); see E.I. Dupont De
Nemours & Co., 22 CIT at 373, 8 F. Supp. 2d at 858 ("Commerce's decision to use the
'substantial transformation' test to determine the nationality of the subject merchandise is a
permissible application of the [Antidumping] statute."); Certain Steel Products from Mexico, 57
Fed. Reg. 57,813, 57,821 (Dep't Commerce Dec. 7, 1992) (preliminary affirmative CVD
determinations and alignment of final CVD determinations with final ADD determinations)
(With respect to Commerce's authority to clarify the scope of an ADD or CVD order, Commerce
has "held in past cases that its rulings on country of origin supersede those of Customs").

[6]The minor processing that was at issue in this matter during the fourth administrative
review was "pickling" and "annealing."  These finishing processes have been determined by
Commerce to be minor processes that do not rise to the level of a "substantial transformation"
and thus do not alter the country-of-origin designation.  See Issues & Decision Mem., supra note
2, at 10, Pub. R. Doc. 7; see also Proposed Agreement Concerning Trade in Certain Steel
Products from the Russian Federation, 64 Fed. Reg. 9891, 9893 (Dep't Commerce Feb. 26, 1999)
(defining pickling and annealing as "minor processing" that "do[] not result in a substantial
transformation or a change in the country of origin of the product that is processed").

petitioned Commerce, to be included as part of the fourth administrative review, for a ruling on

whether "German-origin SSPC is outside the scope of the administrative review of Belgian

SSPC."  (April 2004 Letter, supra, at 2; see also Return Copy of Protest to Customs, Port of

Portland (Apr. 19, 2004), Appendix to Pl. Br., Ex. 20.)

Commerce then granted Plaintiffs' request for a ruling on whether SSPC hot-rolled in

Germany and not further cold-rolled in Belgium was within the scope of the ADD order for

Belgium.  Shortly thereafter, Commerce published its preliminary results and determined, inter

alia, that "the[] sales of merchandise that [were] hot-rolled in Germany and returned to Belgium

for pickling and annealing and shipment, are appropriately classified as merchandise of German

origin" and thus outside the scope of the order for Belgian SSPC.  See Preliminary Results,

supra, at 32,504 (emphasis added).

The Final Results affirmed Commerce's preliminary determination on the issue of

country-of-origin:

> [B]ecause hot rolling constitutes substantial transformation, the country of origin
> of [Plaintiffs'] merchandise which is hot-rolled in Germany, and not further cold-
> rolled in Belgium, is Germany.  Therefore, this merchandise is not subject to the
> order on SSPC from Belgium and not reviewable in the instant proceeding.

(Issues & Decision Mem., supra note 2, at 14.)  Commerce's Final Results were published in the

Federal Register, which incorporated by reference the detailed Issues & Decision Memorandum.

See Final Results, 69 Fed. Reg. at 74,497.

### III.    The Liquidation Instructions

Some 70 days later, on February 22, 2005, Commerce solicited comments from both

Plaintiffs and Defendants-Intervenor regarding its anticipated draft liquidation and cash deposit

instructions.  (See Letter from Maria MacKay to Interested Parties (Feb. 22, 2005), Conf. R. Doc.

4.)  Plaintiffs' submission drew attention to the proposed language and noted that the instructions

"currently state that [German SSPC] . . . is 'no longer subject to suspension of liquidation based

on the Department's decision in the final results of this review.'  This language addresses only

the issue of 'suspension' but does not instruct [Customs] how to liquidate suspended entries

of . . . [German SSPC]."  (Letter from Robert S. LaRussa, Counsel to U&A Belgium, to Hon.

Carlos M. Gutierrez, Secretary of Commerce, 2 (Feb. 24, 2005), Pub. R. Doc. 8 (emphasis

added).)  Plaintiffs then suggested revised language to "properly address" how Customs should

treat the unliquidated entries of German SSPC:

> 3.  Imports of stainless steel plate in coil hot rolled in Germany and not further
> cold rolled in Belgium are not subject to the antidumping duty order on stainless
> steel plate in coil from Belgium.  Entries of this merchandise should be liquidated
> without regard to antidumping duties.

(Id.)  With respect to the CVD order on stainless steel plate in coil from Belgium, Plaintiffs

requested that Commerce "instruct [Customs] that all entries of SSPC that [are] hot rolled in

Germany and not further cold rolled in Belgium [are] outside the scope of the countervailing duty

order and, therefore, should be liquidated free of countervailing duties."  (Id. at 3 (emphasis

added).)

Beginning almost three months later Commerce held several ex parte meetings with the

parties concerning the draft liquidation instructions and the effect of the scope determination.

(See Memorandum to File, By Toni Page, Int'l Compliance Analyst Regarding May 23, 2005

Meeting (May 25, 2005), Pub. R. Doc. 9.)  Plaintiffs argued to Commerce that "the Department

should instruct Customs to liquidate all unliquidated entries, from the fourth administrative

review period and from previous review periods, of SSPC hot rolled in Germany and not further

cold rolled in Belgium without regard to antidumping duties."  (See Memorandum to File

Regarding June 16, 2005 Meeting, at 1 (June 23, 2005), Pub. R. Doc. 12 (emphasis supplied).

On July 1, 2005, Commerce issued final ADD liquidation instructions.  (ADD

Liquidation Instructions for SSPC from Belgium Produced by Ugine & ALZ, N.V. Belgium,

Message No. 5182203 ¶ 3 (July 1, 2005), Appx. to Pl. Br., Ex. 1.)  Commerce explained that it

had rejected Plaintiffs' arguments because "[d]uring the fourth administrative review, neither the

[Defendants-Intervenor] nor [Plaintiffs]" raised the issue of "the effect of the country of origin

decision on unliquidated entries from prior closed reviews." (Liquidation Instr. Mem., supra, at

7.)  As a result Commerce's country-of-origin determination would be limited to "entries covered

by the fourth review and to future entries, i.e., to entries made on or after May 1, 2002." (Id. at 5.)

A week later, on July 8, 2005, Commerce issued ancillary instructions pertaining to:

(1) unliquidated SSPC entries entered during the first POR and subject to the CVD order, and

(2) cash deposits for future entries subject to the CVD order.  (See CVD Cash Deposit

Instructions for SSPC from Belgium, Message No. 5189205 (Jul. 8, 2005), Appx. to Pl. Br., Ex.

2.)  The CVD cash deposit instructions were also to be applied prospectively: "effective

05/01/2002 . . . entries of SSPC hot rolled in Germany and not further cold rolled in Belgium are

not subject to the suspension of liquidation and do not require cash deposits of estimated

countervailing duties."  (Id.)  The CVD liquidation instructions for certain SSPC entered during

the first POR provided that "[e]ntries of SSPC hot rolled in Germany and not further cold rolled

in Belgium [i.e., German SSPC] should be liquidated at the countervailing duty rate specified in

these [Customs] instructions [covering Belgian SSPC]."  (CVD Liquidation Instructions,

Message No. 5189204 ¶ 7 (Jul. 8, 2005), Appx. to Pl. Br., Ex. 3.)

On July 18, 2005, Commerce issued an additional set of ADD liquidation instructions.

(ADD Liquidation Instructions, Message No. 5199201 (Jul. 18, 2005), Appx. to Pl. Br., Ex. 4.)

Also covering dates within the first POR, these ADD liquidation instructions similarly provided

for liquidation German SSPC entries at the rate determined for Belgian SSPC.  (See id. at ¶ 5

("Entries of SSPC hot rolled in Germany and not further cold rolled in Belgium [i.e., German

SSPC] should be liquidated at the antidumping duty rate specified [for Belgian SSPC].").)

Plaintiffs brought suit challenging Commerce's liquidation instructions, which instruct

Commerce to liquidate Plaintiffs' POR 1 entries with both antidumping and countervailing duties

in place.


### DISCUSSION

### I.       Motion to Dismiss for Lack of Subject Matter Jurisdiction

The threshold issue presented here is whether this Court possesses jurisdiction to address

the merits of Plaintiffs' action.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999);

Steel Co. v. Citizens For A Better Env't, 523 U.S. 83, 94-95 (1998).  When deciding either a

motion to dismiss based on a lack of subject matter jurisdiction or failure to state a claim, the

Court will assume all undisputed factual allegations in the complaint as true and will draw all

reasonable inferences in the plaintiff's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir.

1995).  Notwithstanding this rule, the Federal Circuit has instructed that the "'mere recitation of

a basis for jurisdiction . . . cannot be controlling . . . [and therefore] we look to the true nature of

the action in the district court in determining jurisdiction of the appeal.'"  Norsk Hydro Canada,

Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (quoting Williams v. Sec'y of Navy,

787 F.2d 552, 557 (Fed. Cir.1986)).

Plaintiffs claim this Court possesses subject matter jurisdiction under 28 U.S.C.

§ 1581(i), specifically citing subparagraphs (i)(2) and (i)(4), which grant this court exclusive

jurisdiction of any civil action commenced against the United States that arises out of any law of

the United States providing for "tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue" and the "administration of

enforcement with respect to" such matters, respectively.[7]  28 U.S.C. § 1581(i)(2) & (4) (2000).

Defendant contends that this Court lacks jurisdiction because Plaintiffs have failed to

demonstrate that: (i) section 1581(c) was unavailable; and (ii) that there was a facial or operative

inconsistency between the liquidation instructions and the Final Results.  (Def. Br. 17-21.)

Defendants-Intervenor press a different argument that Plaintiffs could have appealed

Commerce's implementation of the country-of-origin determination following completion of the

fourth administrative review under section 1581(c) or raised this issue during any of the previous

three administrative reviews.  (Defs.-Inter. Br. 10-14.)  Defendants-Intervenor secondarily argue

that Plaintiffs have failed to exhaust their administrative remedies as to the retroactive

---

[7]The Court notes that section 1581(i) is the residual jurisdiction provision, and therefore may be invoked only when another subsection of section 1581 is unavailable or the remedy provided by another subsection is "manifestly inadequate."  Nat'l Corn Growers Ass'n v. Baker, 840 F.2d 1547, 1557 (Fed. Cir.1988); Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir.1987).

application of the country-of-origin determination and, therefore, pursuant to 28 U.S.C.

§ 2637(d) (2000), this appeal must be dismissed.  (Id. at 15-19.)

Commerce maintains that Plaintiffs should have raised this issue by bringing suit under

section 1581(c) following Commerce's publication of the Final Results.  Commerce argues that

Plaintiffs challenge the substantive decision not to apply the country-of-origin determination to

unliquidated entries from prior, closed administrative reviews; a decision which, Commerce says,

was made during the fourth administrative review.  Further, Commerce and Defendants-

Intervenor maintain that the decision to only apply the country-of-origin determination

prospectively was clear to Plaintiffs.   They quote limiting language present in both the

Preliminary Results and the Issues & Decision Memorandum, supra, of the Final Results to show

that Plaintiffs knew or should have known that Commerce had decided not to apply the country-

of-origin determination to the POR 1 entries.  (See Def. Br. 22 (quoting Issues & Decision Mem.,

supra, at 14 ("SSPC hot rolled in Germany is not subject to the order of SSPC from Belgium and

not reviewable in the instant proceeding.")); Defs.-Inter. Br. 12 (citing Preliminary Results,

supra.).)  Consequently, Defendants-Intervenor argues that if Plaintiffs took issue with this

application, they had available to them the opportunity to initiate suit within thirty days of the

publication of the Final Results.  (Defs.-Interv. Br. 12 (citing 19 U.S.C. § 1516a(a)(2) (2000)).)

Plaintiffs respond that, at the close of the fourth administrative review, it was not clear

how Commerce intended to treat Plaintiffs' POR 1 entries.  Plaintiffs further argue that

Commerce's determination—that German SSPC falls outside the scope of the ADD and CVD

orders for Belgium—is one of general application, and is not limited to the specific

circumstances of the fourth administrative review.  (Id.)  As a result, Plaintiffs assert that the

liquidation instructions, which do not apply the country-of-origin determination to Plaintiffs'

POR 1 entries, are inconsistent with the Final Results.

Looking to "the true nature of the action" here, Norsk Hydro, 472 F.3d at 1355, this Court

finds that Plaintiffs' claim is a bona fide challenge to Commerce's liquidation instructions and

not to the Final Results themselves. "[A]n action challenging Commerce's liquidation

instructions is not a challenge to the final results, but a challenge to the 'administration and

enforcement' of those final results," properly raised under section 1581(i). Shinyei Corp. of Am.

v. United States, 355 F.3d 1297, 1305 (Fed. Cir. 2004) (quoting Consol. Bearings Co. v. United

States, 348 F.3d 997, 1002 (Fed. Cir. 2003)). Notwithstanding Defendant's and Defendants-

Intervenor's arguments of failure to exhaust, the actual question of whether Commerce's ruling

would affect unliquidated entries under suspension from prior administrative reviews did not

blossom into an issue until after the close of the fourth administrative review, commencing with

the publication of Commerce's draft liquidation instructions. Moreover, as Plaintiffs argue, there

was no administrative issue to challenge following Commerce's publication of the Final Results

because Plaintiffs prevailed on the issue of country-of-origin designation for their merchandise.[8]

First, Commerce did not address in the Final Results the issue of whether the country-of-

origin determination would be applied retroactively to Plaintiffs' unliquidated POR 1 entries. In

fact, based on the record, it appears that Commerce itself had not fully contemplated (much less

made clear to the parties) whether it intended to apply the determination to the unliquidated

---

[8]Plaintiffs cite Mathias v. WorldCom Tech., Inc., for the general proposition that "a party
may not appeal from a favorable judgment simply to obtain review of findings it deems
erroneous." Mathias v. WorldCom Tech., Inc., 535 U.S. 682, 684 (2002). Plaintiffs reason that
since they won below, there was no issue that merited an appeal under section 1581(c). (See Pl.
Br. 9-11.)

entries from prior administrative reviews.  The parties did not brief the issue during the fourth

administrative review, and Commerce accepted briefs and conducted <u>ex parte</u> meetings on the

issue after publishing the draft liquidation instructions.  The submissions and meetings that

occurred after publication of the <u>Final Results</u> are palpable evidence of Commerce's uncertainty

on the issue of whether it would apply the country-of-origin determination to Plaintiffs' POR 1

entries.  Because Commerce had not made a final determination on the issue when it published

the <u>Final Results</u>, Plaintiffs could not have challenged this determination under to section

1581(c).  Indeed, a section 1581(c) suit would likely have been dismissed as unripe.

Defendant cites Am. Signature, Inc. v. United States,  31 CIT __, __, 477 F. Supp. 2d

1281, 1289 (2007), for the proposition that Plaintiffs are barred from bringing this action under

section 1581(i) where section 1581(c) was available to them.  (See Def. Reply Br. 4-6.)  The

court in American Signature, distinguishing its facts from those in <u>Shinyei</u>, 355 F.3d at 1302 n.2,

found that it lacked jurisdiction because the "true nature" of the plaintiff's claim was a challenge

to Commerce's refusal to apply the new cash deposit rates retroactively, a determination made in

the amended final results of that case.  Am. Signature, 477 F. Supp. 2d at 1289 (<u>citing</u> <u>Norsk</u>

<u>Hydro Canada, Inc.</u>, 472 F.3d at 1354-55).  This Court is not persuaded that American

Signature's holding is applicable to the facts surrounding the instant case.  Here, Plaintiffs

challenge the liquidation instructions on the ground that they do not comport with Commerce's

determination that Plaintiffs' imports of SSPC from Germany are not subject to the ADD order

on SSPC from Belgium.  Unlike American Signature, Plaintiffs are in fact challenging the

liquidation instructions insofar as they "deviate from . . . [the] Final Determination." Id. at 1289.[9]

Defendants-Intervenor propose an additional argument.  They reason that Plaintiffs are foreclosed from challenging Commerce's rejection of retroactive application of the Final Results to unliquidated entries of German SSPC suspended from earlier administrative reviews, because Plaintiffs should have raised this issue earlier, during any of the previous administrative reviews. In other words, Defendants-Intervenor argue that Plaintiffs failed to exhaust their administrative remedies.  (See Defs.-Inter. Br. 10-14; 29-32)  This argument is essentially a restatement of their final point wherein, citing 28 U.S.C. § 2637(d), they argue that this appeal must be dismissed for failure to exhaust their administrative remedies.  (See Defs.-Inter. Br. 15-19; 31-32.)  The Court rejects this argument on several grounds.

First, Plaintiffs had pursued their administrative remedies by requesting a country-of-origin determination during the fourth administrative review.  The issue concerning whether SSPC that was hot-rolled in Germany and not further cold-rolled in Belgium first arose during the fourth administrative review and therefore it was appropriately made part of the administrative review.  Plaintiffs can not be expected to raise a challenge on an issue before it ripens or is revealed as an issue.  Further, Plaintiffs had been otherwise engaged in administrative processes of Customs when Commerce issued its erroneous liquidation instructions to sort-out

---

[9]Similarly, unlike this Court's decision in Corus Staal BV v. United States, where the plaintiffs there were actually challenging the substance of the underlying administrative review and not Commerce's liquidation instructions, here Commerce preliminarily released its liquidation instructions explicitly stating, for the first time, that the country-of-origin determination was to be applied only to the fourth administrative review and to future entries only.  See Corus Staal BV v. United States, 31 CIT __, __, 493 F. Supp. 2d 1276, 1285 (2007); Draft Customs Instructions (Feb. 22, 2005), Conf. R. Doc. 4.

and correct its unliquidated entries of German SSPC that had been erroneously designated as

Belgian SSPC pursuant to the Final Results.  (See Pl. Br. 3; Return Copy of Protest to Customs,

Port of Portland (Apr. 19, 2004), Appendix to Pl. Br., Ex. 20.)

     Defendants-Intervenor rely on Sandvik Steel Co. as support for their exhaustion

argument.  (Defs.-Inter. Br. 30-32.)  The court in Sandvik Steel Co. affirmed the dismissal of two

cases where the plaintiffs in each failed to exhaust their administrative remedies by timely

seeking a scope determination from Commerce.  See Sandvik Steel Co., 164 F.3d at 597, 602.

However, this case is inapposite to the facts at issue here.  Fatally, plaintiffs in Sandvik Steel Co.,

unlike Plaintiffs here, did not timely seek a scope determination with Commerce but instead filed

a protest with Customs after the entries had already been liquidated.  Id. at 598.  Here, Plaintiffs

brought their request for a scope determination during the fourth administrative review and did

not wait until liquidation of the entries to raise their challenge.  (See April 2004 letter.)

Moreover, Plaintiffs here do not seek to reach the entries from the prior closed reviews that have

been liquidated.  Plaintiffs point out that they do not seek to reopen any of the closed

administrative review proceedings, but merely seek to have the ruling of the Final Results apply

to the enjoined unliquidated entries from the first administrative review.  (See Pl. Reply Br. 16

("[Plaintiffs] do[] not ask that any reviews be re-opened."); see also Pl. Br. 16-17 (explaining that

the U.S. trade laws "draw the line of administrative finality for assessment of duties applicable to

specific entries at the time of final liquidation, not the closing of any administrative review").  For

purposes of the matter before the Court, Sandvik Steel Co. does not supply a binding rule.

     Accordingly, this Court has jurisdiction to review Plaintiffs' challenges to the liquidation

instructions issued by Commerce pursuant to its residual jurisdiction under 28 U.S.C. § 1581(i).

See Shinyei, 355 F.3d at 1305; Consol. Bearings Co., 348 F.3d at 1007; J.S. Stone, Inc. v. United

States, 27 CIT 1688, 1697, 297 F. Supp. 2d 1333, 1341 (2003) ("Commerce's characterization

would effectively prevent parties from seeking redress from mistakes made in its liquidation

instructions to Customs when those instructions are sent after the final determination is published

and beyond the time permitted for review under § 1581(c).").

**II.      Merits—Judgment On the Agency Record**

A.      Standard of Review

For actions governed by section 1581(i), the Court reviews Commerce's actions to

determine whether those actions are "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." 5 U.S.C. § 706(2)(A) (2000); 28 U.S.C. § 2640(e) (2000); see also

Mittal Steel Galati, S.A. v. United States, 31 CIT __, __, 491 F. Supp. 2d 1273, 1280 n.6 (2007).

When reviewing Commerce's interpretations of the antidumping statute for accordance with law,

the court applies the two-step process set out in Chevron U.S.A., Inc. v. Natural Resources

Defense Council, Inc., 467 U.S. 837, 842-43 (1984).  Under the first step, the Court determines

"whether Congress has directly spoken to the precise question at issue.  If the intent of Congress

is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43; accord Timken Co.

v. United States, 354 F.3d 1334, 1341 (Fed. Cir. 2004).  If, however, "the statute is silent or

ambiguous with respect to the specific issue, the question for the court is whether the agency's

answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843; accord

Timken, 354 F.3d at 1342.  To determine whether Commerce's statutory interpretation is

permissible, the court considers several factors, including "the express terms of the provisions at

issue, the objectives of those provisions and of the antidumping scheme as a whole." <u>Mitsubishi</u>

<u>Heavy Indus., Ltd. v. United States</u>, 22 CIT 541, 545, 15 F. Supp. 2d 807 (1998).

B.        Analysis

Plaintiffs challenge the liquidation instructions Commerce issued covering Plaintiffs'

POR 1 entries.  Plaintiffs argue that Commerce did not have the authority to instruct Commerce

to liquidate Plaintiffs' POR 1 entries with antidumping and countervailing duties in place.

Because Commerce determined in the <u>Final Results</u> that Plaintiffs' imports of SSPC were of

German origin, and thus not subject to the ADD order on SSPC from Belgium, Plaintiffs argue

that Commerce should have instructed Customs to liquidate Plaintiffs' earlier POR 1 entries of

SSPC from Germany free of both antidumping and countervailing duties.  For the reasons that

follow, this Court agrees.

**1.        Authority to Impose Antidumping and Countervailing Duties**

Commerce derives its authority to impose antidumping and countervailing duties from

the unfair trade statute, 19 U.S.C. §§ 1671–1677n (2000).  The ADD provision provides:

> If . . . [Commerce] determines that a <u>class or kind</u> of <u>foreign merchandise</u> is being,
> or is likely to be, sold in the United States at less than its fair value, and [the ITC
> determines that the industry is material injured] by reason of imports of that
> merchandise . . . then there shall be imposed upon such merchandise an
> antidumping duty . . . ."

19 U.S.C. § 1673 (2000) (emphasis added).  The CVD provision provides:

> If . . . [Commerce] determines that <u>the government of a country</u>[10] . . . is providing
> . . . a countervailable subsidy with respect to the manufacture, production, or
> export of <u>a class or kind</u> of merchandise imported . . . into the United States . . .
> then there shall be imposed upon such merchandise a countervailing duty . . . .

---

[10]"The term 'country' means a foreign country . . . ."  19 U.S.C. § 1677(3).

19 U.S.C. § 1671 (2000) (emphasis added).  Both provisions require Commerce to make a

finding of either dumping or subsidizing for a class or kind of merchandise from a particular

country.  19 U.S.C. §§ 1671, 1673; see also E.I. Du Pont de Nemours & Co. v. United States, 22

CIT 370, 375, 8 F. Supp. 2d 854, 859 (1998) ([A]ntidumping orders apply to merchandise from

particular countries, . . . [therefore] determining the country where the unfairly traded

merchandise is produced or manufactured is fundamental to the proper administration and

enforcement of the antidumping statute.")

      Pursuant to these provisions, Commerce publishes ADD and CVD orders that instruct

Customs to assess antidumping or countervailing duties on particular imports.  19 U.S.C.

§§ 1673e(a)(1) (authority to assess antidumping duties), and 1671e(a)(1) (authority to assess

countervailing duties).  Commerce's ADD and CVD orders must specify both the class or kind of

merchandise and the particular country from which the merchandise originates.  See, e.g., Certain

Cold-Rolled Carbon Steel Flat Products from Argentina, 58 Fed. Reg. 37,062, 37,065 (Dep't

Commerce Jul. 9, 1993) (notice of final determination of sales at less than fair value) ("The

scope of an antidumping or countervailing duty order is defined by the type of merchandise and

by the country of origin (e.g., widgets from Ruritania).") (emphasis added).  "For merchandise to

be subject to an order, it must meet both parameters, i.e., product type and country of origin."  Id.

      Conversely, if merchandise does not meet one of the parameters—either class or kind, or

country of origin—it is outside the scope of the ADD or CVD order.  Final Determination of

Sales at Less Than Fair Value: 3.5" Microdisks and Coated Media Thereof from Japan, 54 Fed.

Reg. 6433, 6435 (Dep't Commerce Feb. 10, 1989) (finished microdisk processed in a particular

manner was a product of Canada "for country-of-origin purposes under the antidumping law, and

thus is not within the scope of" the investigation on microdisks from Japan) (emphasis added).

And if the merchandise is outside the scope of an ADD or CVD order, <u>i.e.</u>, not "subject

merchandise,"[11] then Commerce, per statute and per its own rules, may not impose duties on

those goods.  <u>See</u> 19 U.S.C. §§ 1673e(a)(2), 1671e(a)(2); 19 C.F.R. § 351.211(b)(1) (2007)

(Commerce's authority to issue instructions to Customs is limited to "subject merchandise");

<u>Duferco Steel, Inc. v. United States</u>, 296 F.3d 1087, 1098 (Fed. Cir. 2002) ("Congress made no

provision for bringing other merchandise within the scope of antidumping and countervailing

duty orders that was otherwise outside the language of those orders."); <u>Corus Staal BV v. United</u>

<u>States</u>, 31 CIT __, __, Slip Op. 07-140, at *17 (Sep. 19, 2007) ("As a general rule, Commerce

cannot impose antidumping duties without a valid determination of dumping") (<u>citing</u> 19 U.S.C.

§§ 1673 & 1673d(c) and 19 C.F.R. § 351.212).  Thus in this context, the language of the ADD or

CVD order establishes the extent of Commerce's authority.  <u>Smith Corona Corp. v. United</u>

<u>States</u>, 915 F.2d 683, 685–86 (Fed. Cir. 1990) ("The class or kind of merchandise encompassed

by a final antidumping order is determined by [language of] the order . . . . [and] [a]lthough the

scope of a final order may be clarified, it cannot be changed in a way contrary to its terms.")

(citations omitted).

Here, the ADD and CVD orders at issue cover SSPC from Belgium.  Plaintiffs imported

SSPC that was hot rolled in Germany and pickled, annealed, packaged in and shipped from

Belgium.  Commerce determined that the country-of-origin of Plaintiffs' merchandise was

---

[11]"The term 'subject merchandise' means the class or kind of merchandise that is within the scope of an investigation, a review, a suspension agreement, an order under this subtitle or section 1303 of this title, or a finding under the Antidumping Act, 1921."  19 U.S.C. § 1677 (25) (2000).

Germany, and, therefore, that Plaintiffs' imports were not subject to the ADD and CVD orders

on SSPC from Belgium.  See Final Results and Issues & Decision Mem., supra.  Nevertheless,

Commerce issued liquidation instructions to Customs to liquidate Plaintiffs' POR 1 unliquidated

entries of German SSPC as if they were nevertheless subject to the ADD and CVD orders on

Belgian SSPC.  This Commerce cannot do.

It is true that on questions of scope, Commerce has "broad authority to interpret its own

antidumping and [countervailing] duty orders."  INA Walzlager Schaeffler KG v. United States,

108 F.3d 301, 307 (Fed. Cir.1997).  However, once Commerce ruled that the SSPC at issue here

was no longer subject to either order (i.e., falling outside the scope of the orders), its authority

impose duties over that merchandise evaporated.  Duferco Steel, Inc., 296 F.3d at 1097

("Repeatedly, decisions of this court confirm that although the scope of a final order may be

clarified, it can not be changed in a way contrary to its terms. . . . We have also noted

Commerce's inability to interpret orders contrary to their terms.") (internal citations and quotes

omitted).  Accordingly, Commerce's instructions to Customs to liquidate Plaintiffs' POR 1

entries with ADD and CVD duties in place are not in accordance with law.

Furthermore, this Court recognizes the long-standing principle that an administrative

agency may not act beyond the bounds of authority conceived and delegated by Congress.  FAG

Italia v. United States, 291 F.3d 806, 816 (Fed. Cir. 2002) ("an agency literally has no power to

act . . . unless and until Congress confers power upon it") (internal quotation and citation

omitted); see generally Civil Aeronautics Bd. v. Delta Air Lines, Inc., 367 U.S. 316, 322 (1961)

(An agency "is entirely a creature of Congress and the determinative question is not what the

[agency] thinks it should do but what Congress has said it can do.").  Congress has answered the

question of when Commerce may impose antidumping and countervailing duties on imports:

only when the merchandise is subject to a valid ADD or CVD order.[12]

     To hold that Commerce can instruct Customs to liquidate merchandise that is not within

the scope of an ADD or CVD order with antidumping and countervailing duties in place, as

Commerce desires, would have this Court sanction an <u>ultra vires</u> act.  <u>See</u> <u>Pac Fung Feather Co.,

Ltd. v. United States,</u>19 CIT 1451, 1456, 911 F. Supp. 529, 534 (1995) ("It is properly within the

jurisdictional province of the court to declare ultra vires and void, agency action that is beyond

the scope of its defined statutory authority.").  Instead, this Court holds that Commerce's

instructions to Customs to liquidate Plaintiffs' unliquidated POR 1 entries of German SSPC with

antidumping and countervailing duties in place are "not in accordance with law," 5 U.S.C.

§ 706(2)(A), specifically 19 U.S.C. §§ 1671e and 1673e.

## 2.    Principles of Administrative Finality.

     Commerce argues that principles of administrative finality prevent the agency from

issuing instructions to Customs to liquidate Plaintiffs' POR 1 entries without antidumping or

countervailing duties.  (<u>See</u> <u>Liquidation Instr. Mem.</u>, <u>supra</u>, at 4.; Def. Br. 28–34.)  Yet, this is

not the case.  Generally, "administrative finality" as applied to agency decisions refers to "an

action where the 'decision-making process has reached a stage where judicial review will not

disrupt the orderly process of adjudication.'" <u>Ind. Steelworkers Union v. United States Sec'y of

Labor</u>, 30 CIT __, 2006 WL 3354281, at *9 (Nov. 17, 2006) (<u>quoting</u> 5 JACOB A. STEIN, ET AL.,

ADMINISTRATIVE LAW § 48.03[1] at 41 (2006)).  In the trade context, administrative finality

---

[12]<u>But see</u> <u>Corus Staal BV</u>, 31 CIT __, Slip Op. 07-140, at *17 (Commerce may impose antidumping duties where valid determination of dumping was subsequently revoked to comply with a negative World Trade Organization dispute settlement panel finding).

attaches when entries are <u>liquidated</u>, not when the administrative review closes.[13]  Here, Plaintiffs

do not seek to disturb any entries that Customs has already liquidated.  Because Plaintiffs request

only that Commerce instruct Customs to liquidate at the proper rate the POR 1 entries of German

SSPC that have not yet been liquidated, principles of administrative finality do not preclude

Plaintiffs' requested relief.

Multiple cases have held that Commerce may apply determinations made in a later-

occurring proceeding to previously-entered, but not yet liquidated, entries.  <u>See</u> <u>Wirth Ltd. v.</u>

<u>United States</u>, 22 CIT 285, 301-02, 5 F. Supp. 2d 968, 982 (1998) (sustaining retroactive

application of an affirmative scope determination) ("Commerce may apply a scope ruling

beginning with the entire period of investigation during which entries of the scope merchandise

were first suspended.") (internal brackets and quotations omitted); <u>Timkin Co. v. United States</u>,

21 CIT 889, 890-91, 972 F. Supp. 702, 703 (1998) (sustaining Commerce's decision to apply a

scope ruling "beginning with the entire period of investigation during which entries of the scope

merchandise were first suspended for antidumping purposes"); <u>Koyo Seiko Co., Ltd. v. United</u>

<u>States</u>, 21 CIT 893, 1997 WL 438843, at *1 (1997) ("Commerce explains that its normal practice

is to apply a scope determination beginning with the entire period of investigation during which

entries of the scope merchandise were first suspended for antidumping purposes."); <u>FAG</u>

<u>Kugelfischer Georg Schafer KGaA v. United States,</u> 20 CIT 824, 827-31, 932 F. Supp. 315, 318-

20 (1996) (sustaining Commerce's decision to apply an affirmative scope ruling retroactively);

<u>but see</u> <u>Antidumping Duty Order on Cylindrical Roller Bearings and Parts Thereof from Japan,</u>

---

[13]In fact, in some situations, liquidation does not trigger administrative finality.  <u>See</u>
<u>Shinyei</u>, 355 F.3d at 1311 (liquidation of the entries at issue did not divest the court of
jurisdiction; reliquidation might be an available remedy under particular facts of the case).

(A-588-804), available at http://ia.ita.doc.gov/remands/98-09-02903.htm (final results of

redetermination on remand final scope ruling), aff'd, Torrington Co. v. United States, 24 CIT

306, 306 (2000).  The argument for retroactive application of a determination is particularly

powerful where, as here, Commerce determines that the merchandise at issue was never subject

to the ADD or CVD order under which the importer paid duty deposits.

　　　　In addition, Commerce's regulations and practice in the "scope review"[14] context belie

Commerce's touted interpretation of administrative finality.  If Commerce determines through a

scope review that "the product in question is not included within the scope of the order,"

Commerce "will order any suspension of liquidation on the product ended, and will instruct the

Customs Service to refund any cash deposits or release any bonds relating to that product."

19 C.F.R § 351.225(l)(2); accord id. at § 351.225(l)(3) (emphasis added).  Commerce regularly

applies negative scope rulings retroactively to all unliquidated entries of the merchandise at issue,

regardless of entry date.  See, e.g., Antidumping Scope Ruling on Polyethylene Retail Carrier

Bags from the People's Republic of China (A-570-886), Message No. 6194206 (Jul. 13, 2006)

(available at http://addcvd.cbp.gov/detail.asp?docID=6194206 (last visited Sep. 10, 2007));

---

[14]A "scope review" is a procedure to determine whether "a particular product is included within the scope of an antidumping or countervailing duty order or a suspended investigation." 19 C.F.R. § 351.22(a) (2007).  The parties disagree whether the country-of-origin determination that Commerce undertook in the instant case was, in fact, a scope review.  Plaintiffs argue that the country-of-origin determination was a scope review, which would obligate Commerce to apply the results retroactively.  Defendant argues that a country-of-origin determination is distinct from a scope review.  Because this Court finds that Commerce was required to apply the country-of-origin determination to Plaintiffs' unliquidated POR 1 entries, this Court need not decide whether a country-of-origin determination is a type of scope review.  Regardless, the two procedures are analogous in that both clarify whether particular merchandise is subject to an ADD or CVD order, and this Court finds Commerce's scope regulations and practice instructive regarding the concept of administrative finality.

Scope Ruling on Pressure Sensitive Tape from Italy (A-475-059), Message No. 2148113 (May 27, 1992) (available at http://addcvd.cbp.gov/detail.asp?docID=2148113 (last visited Sep. 10, 2007)); Scope Determination on the Antidumping Duty Order On, Granular Polytetrafluoroethylene from Japan (A-588-707), Message No. 3282112 (Oct. 9, 1992) (available at http://addcvd.cbp.gov/detail.asp?docID=3282112 (last visited Sep. 10, 2007)); Stainless Steel Bar from India, (A-533-810), Message No. 5157204 (Jun. 6, 2005) (available at http://addcvd.cbp.gov/detail.asp?docID=5157204 (last visited Sep. 10, 2007)).  The CAFC has confirmed this practice.  See Forest Products N.W., Inc. v. United States, 453 F.3d 1355, 1358-59 (Fed. Cir. 2006) ("If Commerce concludes that the imported merchandise is not within the scope of the antidumping or countervailing duty order, Commerce will order Customs to refund any cash deposits paid by the importer") (citing regulations) (emphasis added).

All of this reveals that principles of administrative finality do not bar Commerce from regularly applying negative scope determinations retroactively to unliquidated entries from previous administrative review periods, which are analogous to Commerce's country-of-origin determination at issue here.  "An agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently."  RHP Bearings, 288 F.3d at 1347. Commerce's proffered explanation for failing to instruct Customs to liquidating Plaintiffs' POR 1 entries of German SSPC without antidumping and countervailing duties—administrative finality—is undermined by the agency's practice with respect to scope reviews.

Commerce reasons that Plaintiffs' position here is untenable since it would require re-opening prior closed administrative reviews as well as other additional "parades of horror."[15] (See Def. Br. 32-34).  This Court takes notice, however, and Plaintiffs have repeatedly stated that they "do[] not ask that any reviews be re-opened" but merely seek to have the scope review applied to the unliquidated German entries under suspension from the first POR.  (See Pl. Reply Br. 16-17.)  Moreover, this Court neither seeks nor embraces such a position had it been advocated.  See Zenith Radio Corp, 710 F.2d 806.[16]  Because principles of administrative finality do not preclude Plaintiffs' requested relief, this Court remands to Commerce with instructions to issue to Customs instructions to liquidate Plaintiffs' unliquidated entries of German SSPC without antidumping or countervailing duties, and refund the unliquidated deposits collected by Customs.

---

[15]See King Instrument Corp. v. Otari Corp., 767 F.2d 853, 857 (Fed. Cir. 1985).

[16]Defendants-Intervenor argue that this appeal should be dismissed as to Plaintiffs' previously liquidated entries.  Even if Plaintiffs had made such a request, this Court would be unable to furnish a remedy to reliquidate Plaintiffs' liquidated entries from the first three POR without ADD or CVD.  See Zenith Radio Corp. v. United States, 710 F.2d 806 (Fed. Cir. 1983) (liquidation of entries covered by an annual review terminates any judicial challenge to the final determination of that review); United States v. Utex Int'l Inc., 857 F.2d 1408, 1409-1410 (Fed. Cir. 1988) ("liquidations are effectively final"); Yancheng Baolong Biochem. Prods. Co. v. United States, 406 F.3d 1377, 1381 (Fed. Cir. 2005) (same); cf. Hylsa, S.A. de C.V. v. United States, 31 CIT __, __, 469 F. Supp. 2d 1341, 1345–46 (2007).  The Court notes that all entries covered by the second and third administrative reviews have been liquidated.  Therefore, under the longstanding rule of this Circuit and under the circumstances of this case, this Court cannot disturb any liquidated entries of German SSPC inadvertently designated as Belgian SSPC during the POR for the first, second, and third administrative reviews.

Court No.: 05-444                                                    Page 30

### CONCLUSION

For the foregoing reasons, this Court grants Plaintiffs' motion for judgment on the agency

record, denies Defendant's motion in its entirety, and holds that Commerce's liquidation

instructions are indeed arbitrary, capricious or otherwise not in accordance with law.  A separate

Order of the Court will be issued in conjunction and in accordance with this Opinion.


                                              /s/ Gregory W. Carman
                                             Gregory W. Carman


Dated: October 1, 2007
        New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                                Deputy Clerk